UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Case No. |
| v. | ) | 13-cr-113-JMH |
| | ) | |
| TIMOTHY LANGFELS, | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |

\*\*\*

The Court has considered the Motion to Suppress and Dismiss, as well as the Memorandum in Support thereof [DE 15], filed by Defendant Langfels and the Response [DE 28] filed by the United States of America. The Court has also heard the evidence presented during the hearing on this motion on November 18, 2013. At the hearing, the Court announced its decision and ordered that, in light of the relevant law and the evidence presented, Defendant's Motion to Suppress and to Dismiss was denied. This Memorandum Opinion is intended to memorialize the reasoning underlying that decision.

I.

Detectives Darren Allen and Edwin "Bubba" Botkin received information from another law enforcement officer that Defendant Langfels might be operating a marijuana grow operation at a

residence located at 1418 Clintonville Road in Bourbon County, Kentucky. Naturally curious about the information that they had received, the detectives drove to 1418 Clintonville Road in an effort to engage Langfels in a conversation about his activities. At the time of their first visit, they saw no vehicles on the property and, assuming no one was home, left without approaching the house. When the detectives visited the house a second time, on January 10, 2013, they saw a truck parked in the gravel driveway of the residence.

Believing that Langfels would be at home, they approached the house by driving down the driveway, which was in a horseshoe or half-circle shape that looped around the house. As they approached, they noted that the door at the front of the house appeared unused, so they continued down the driveway to the door in the back of the house. When they approached that door and stood in front of it to knock, the officers smelled the distinctive aroma of green-growing marijuana. They also heard a dog barking on the other side of the door. After knocking at the door and receiving no response by a human resident of the house, they decided to seek a warrant to search the house because of the odor of marijuana.

They eventually circled the house in an effort to reach the home's occupants by knocking on the door at the front of the house. During that time, they observed that there was a great deal of electricity usage being registered by the meter at the

house and that there was condensation on the windows. They again smelled the odor of green-growing marijuana when they approached the front door. No one answered that door when they knocked.

II.

"[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590 (1980). The law has, however, long permitted officers to engage in consensual encounters with suspects without violating the Fourth Amendment. *United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005) (citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 821 (6th Cir. 2005); *United States v. Hudson*, 405 F.3d 425, 439 n. 10 (6th Cir. 2005); *United States v. Waldon*, 206 F.3d 597, 602 (6th Cir. 2000)). These consensual encounters are no less permissible simply because they take place at the entrance of a citizen's home, and the Court of Appeals for the Sixth Circuit has recognized "'knock and talk' consensual encounters as a legitimate investigative technique at the home of a suspect or an individual with information about an investigation." *Id.* (citations omitted). On at least one occasion, the approach to a back door for a knock and talk, when it serves as a primary entrance to a home, has been approved in the context of a Fourth Amendment challenge. *See Thomas*, 430 F.3d at 276 and 281

(holding that Fourth Amendment was not violated where officers approached back door, which was primary entrance to home, and engaged in knock-and-talk where officers' conduct did not rise to the level of a constructive entry). It is well-established that, under the right circumstances, "the officers' decision to proceed around the house to seek out a back door [is] within the scope of the knock and talk investigative technique. . . . recognized in this circuit." *Hardesty v. Hamburg Twp.*, 461 F.3d 646, 654 (6th Cir. 2006).

During the hearing on this motion, Defendant made a mighty and successful effort to establish that the door where the officers knocked was in the back of the house and that, thus, it was the back door of the house in an "architectural" sense. Because the detectives approached the door at the back of the house rather than the front door of the house, argued Defendant, Detectives Allen and Botkin breached the curtilage of the house without a warrant in violation of the Fourth Amendment to the United States Constitution and that all evidence discovered as a result of the warrant obtained on facts gleaned while standing at the back door should be excluded. The United States argues, however, that the detectives were permitted to approach the house and the door in the back of the house because it was – no more and no less – a knock-and-talk approach to the primary door of the Langfels residence, relying on *Hardesty*.

The Court is mindful that the decision in *Hardesty* was reached where officers went first to the front door and, there being no response to their knock, then went around to the back deck of a house to knock at a door located there – "a reasonable step . . . directed towards initiating a conversation with the person or persons in the house." *Hardesty*, 461 F.3d at 654. Here, the officers skipped the first step undertaken in *Hardesty* – approaching the door at the front of the house – and went immediately to knock at the door which, reasonably, they concluded was the main (if not only) point of ingress and egress to the residence, even though it was located in the back of the house.

That door was, for the purposes of the officers' approach to the house to knock and engage the resident in conversation, an obvious choice. It was clearly the main entrance to the house. The door at the rear of the house was located in an easily accessible location along the driveway. There was a light for illuminating the entryway in the dark, there was obvious access to the doorway from the gravel driveway by virtue of a concrete pad, a vehicle was parked nearby, and someone had left their boots near the door. These are all facts from which the officers could reasonably conclude that the rear door was in use by those who entered or exited the house.

The Court, as did the officers, compares it to the other door, located near the front of the house. Large shrubs or

trees grew thick around the driveway near the door, such that one would have had to have opened one's vehicle door into the foliage to exit one's vehicle at that location.  There was no obvious pathway to the door from the driveway or the road – no paving stones, sidewalk, gravel path, or even signs of wear in the grass or vegetation near the entrance — which indicated that anyone was expected to or had recently approached the door.  Further, the door was covered in cobwebs and surrounded by piles of leaves and other debris.  There was a bench located on the porch area in front of that door which would have blocked at least part of the doorway, made it difficult to approach the door itself, and, perhaps, inhibited the opening of the door.  In other words, it was reasonable for the officers to bypass that door and proceed to the other door.

The fact that the officers did not stop at the door at the front of the house before proceeding to the back door on these facts is a distinction from the scenario in *Hardesty* which, ultimately, makes no difference because it was permissible for the officers to approach the main door of the house.  On the facts before this Court, bypassing the first door that the officers reached as they drove down the driveway and first approaching the door at the rear of the house was "a reasonable step . . . directed towards initiating a conversation with the person or persons in the house." *Hardesty*, 461 F.3d at 654; *see also Thomas*, 430 F.3d at 276 and 281.  Thus, they were

permissibly engaged in the knock-and-talk investigative technique recognized in this circuit when they approached the main door to the home located at the rear of the house.

Further, even if the officers had impermissibly approached the door at the rear of the house, where they first discovered the odor of green-growing marijuana, that is no reason to exclude the evidence discovered by virtue of the warrant obtained after their visit to the home based on what they observed there. The presence of marijuana in the residence would have, inevitably, been discovered upon the approach to the front door – the door which Defendant argues that the officers should have approached – where the officers again smelled the distinctive odor of green-growing marijuana. The inevitable discovery doctrine "allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)). In approving the inevitable discovery exception, the Supreme Court reasoned that "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial

proceedings." *Nix*, 467 U.S. at 447.  The same rationale would apply in this instance.

Ultimately, Detectives Allen and Botkin did not violate the Fourth Amendment when they approached the main door at the rear of the house, and the Motion to Suppress and to Dismiss [DE 15] is denied.

**IT IS SO ORDERED.**

This the 19th day of November, 2013.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge